James CAMOZZI, Plaintiff–Appellant,

v.

ROLAND/MILLER AND HOPE
CONSULTING GROUP, Joint
Venture, Defendant,

and

United States of America, and Does 1
through 100, Inclusive,
Defendants–Appellees.

Gary LESSNAU, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Nos. 87–2554, 87–2579.

United States Court of Appeals,
Ninth Circuit.

Argued May 9, 1988.

Submitted Dec. 5, 1988.

Decided Jan. 20, 1989.

Patrick W. Coyle, Ernst & Coyle, Santa
Rosa, Cal., for plaintiffs-appellants.

Andrew M. Wolfe, Asst. U.S. Atty., San
Francisco, Cal., for defendants-appellees.

Before BROWNING, ALARCON and
NORRIS, Circuit Judges.

JAMES R. BROWNING, Circuit
Judge:

James Camozzi and Gary Lessnau were
injured during construction of a United
States Post Office in Petaluma, California.
Both sued the United States under the Fed-
eral Tort Claims Act (FTCA). Summary
judgment was granted in favor of the Unit-
ed States on the ground that USPS's al-
leged negligence occurred in the perform-
ance of a discretionary function.[1] *See* 28

---

1. The two suits consolidated in this court were
assigned to different judges on the district court.

Only one of the judges stated reasons for grant-
ing summary judgment. However, the cases are
identical, the same counsel appeared in both
cases, the arguments made and the record sub-
mitted to both judges were the same, and both
granted summary judgment. We assume they
did so for the same reason.

288

U.S.C. § 2680(a).[2] We reverse.

The United States Postal Service (USPS) contracted with the Roland/Miller Associates and Hope Consulting Group (Roland/Miller) to supervise the construction of the Petaluma postal facility. It contracted with Roebbelen Construction Co., Inc. (Roebbelen) to serve as general contractor.

Camozzi and Lessnau were employed by Roebbelen as cement masons. Camozzi fell through an unguarded opening in metal decking on the second floor and sustained serious injuries. The next day Lessnau fell through another opening in the same floor and was similarly injured.

Each sought recovery on two theories of tort liability under California law.[3] The district court did not consider the merits of plaintiffs' claims, nor do we. The sole question before us is whether the conduct upon which plaintiffs rely for recovery falls within the discretionary function exception.

The government argues USPS delegated its responsibility for worker safety to Roebbelen in its contract with that company, and in doing so exercised a discretionary function excepted from the FTCA by section 2680(a).

Plaintiffs do not challenge USPS's execution of the contract imposing responsibility for worker safety upon Roebbelen. Instead they contend that under the Roebbelen contract, USPS retained responsibility for overseeing compliance with safety precautions, and contracted with Roland/Miller to discharge that responsibility. They allege their injuries were caused by USPS's negligent performance, directly or through its agent or employee Roland/Miller, of the safety obligations it retained.

USPS's contract with Roebbelen included the following relevant provisions: Roebbelen was required to "take proper safety and health precautions to protect the work, the workers, the public, and the property of others." Roebbelen was not to require employees to work in hazardous or dangerous surroundings. Roebbelen was to comply with the Occupational Safety and Health Act of 1970, which specified that floor openings were to be covered. 29 C.F.R. § 1926.500(b) (1988). The contract also stipulated that metal deck openings be covered. Work not conforming to contract specifications was to be deemed defective and rejected by USPS. Roebbelen was to submit to USPS for approval a job safety program designed to "minimize or eliminate occupational injuries." Roebbelen was required to furnish USPS an on-site field office and was required to report all accidents to USPS.[4] All work was to be performed under the general direction of USPS's contracting officer or his delegate. The contractor was to perform the work in accordance with orders authorized by USPS's contracting officer. USPS could change "the method or manner of performance of the work" without notice; remove any employee it deemed "incompetent, careless or otherwise objectionable;" or terminate or suspend the contract at its convenience. USPS could cancel the contract for failure to comply with health and safety standards.

**2.** Section 2680(a) provides in part that the Act "shall not apply to (a) Any claim based upon an act or omission of an employee of the Government, exercising due care ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

**3.** The first theory was that USPS violated a mandatory duty, imposed upon one who hires an independent contractor to perform work involving special risk, to exercise reasonable care to see that the contractor protects its employees from the risk. *See, e.g., Aceves v. Regal Pale Brewing Co.*, 24 Cal.3d 502, 509, 156 Cal.Rptr.

41, 44, 595 P.2d 619, 621 (1979); *Griesel v. Dart Ind., Inc.*, 23 Cal.3d 578, 585, 153 Cal.Rptr. 213, 217, 591 P.2d 503, 506 (1979). *See also Rooney v. United States*, 634 F.2d 1238, 1244 (9th Cir. 1980) (applying California law); *Gardner v. United States*, 780 F.2d 835, 838 (9th Cir.1986) (applying California law).

The second theory was that USPS, directly or through its agent or employee Roland/Miller, negligently failed to supervise compliance with safety standards at the work site. *See e.g., Biondini v. Amship Corp.*, 81 Cal.App.2d 751, 763, 185 P.2d 94, 101 (1947).

**4.** There was evidence USPS's on-site technical representative reported safety violations to his supervisors.

The Roland/Miller contract included the following provisions: Roland/Miller was "responsible for the administration of the contract between USPS" and Roebbelen. Roland/Miller was designated USPS's on-site technical representative.[5] Roland/Miller was to review the contractor's safety plan and monitor the security program, and to be "concerned generally with their observance," although "compliance therewith is solely the contractor's responsibility." Roland/Miller was to record all accidents daily, make weekly reports, and review safety with the contractor at monthly meetings. Roland/Miller was required to "make daily inspections of the construction, materials and workmanship to assure compliance with plans, specifications, and other contract documents." Daily inspections were to be made of 35 listed items, including "floor openings."

As we have said, plaintiffs do not contend their injuries arose from the fact USPS contracted with Roebbelen for the performance of safety functions during construction. Plaintiffs also disavow reliance on USPS's approval of Roebbelen's safety plan. They rely, as we have noted, upon the alleged negligence of USPS in discharging, directly or through Roland/Miller, USPS's authority to police Roebbelen's compliance with safety standards.[6] Assuming arguendo, as the district court did, that USPS retained this authority, the question is whether the USPS's exercise of this authority fell within the discretionary function exception. The district court held it did. We believe it did not.[7]

The acts and omissions upon which plaintiffs rely are not within the discretionary function exception merely because they involved the exercise of choice by the persons responsible.[8] The existence of choice is essential to the application of the exception, *see Berkovitz v. United States*, —— U.S. ——, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988); but does not alone justify its application. The discretionary function exception "protects only governmental actions and decisions based on consideration of public policy." *Id.*, 108 S.Ct. at 1959. It "insulates the government from liability if the action challenged ... involves the permissible exercise of policy judgment." *Id.* In the language of *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 820, 104 S.Ct. 2755, 2767, 81 L.Ed.2d 660 (1984), courts may not "second-guess the political, social, and economic judgments of an agency exercising its regulatory function." The negligent failure of USPS to discover the floor openings through which plaintiffs fell was not of this nature.

In arriving at the contrary conclusion, the district court relied primarily upon *Varig*, particularly the statement that "[w]hen an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Id.* at 819–20, 104 S.Ct. at 2767–68.

This comment might apply to USPS's decision to delegate part of its responsibility for worker safety to Roebbelen, but plaintiffs do not base their actions upon

---

**5.** See note 4 and accompanying text.

**6.** Reference to acts or omissions of the USPS throughout this opinion is intended to include acts of USPS and those of its agents and employees, including Roland/Miller, although whether Roland/Miller was in fact an agent or employee is an issue to be determined upon remand. See note 5 above.

**7.** We reject at the outset plaintiff's argument the discretionary function exception is inapplicable to plaintiff's first theory of recovery (that USPS breached a nondelegable duty to exercise reasonable care to insure the independent contractor protected its employees from special risks).

Section 2680(a) is not overridden by state tort rules, including California's "peculiar risk" doctrine. *See In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982, 996–98 (9th Cir.1987). The extent of the immunity of the United States to suit is governed by section 2680(a), which cannot be preempted by state law. *Wright v. United States*, 719 F.2d 1032, 1034–35 (9th Cir.1983).

**8.** *See ARA Leisure Services v. United States*, 831 F.2d 193, 195 (9th Cir.1987) (*quoting Drake Towing Co., Inc. v. Meisner Marine Construction Co.*, 765 F.2d 1060, 1064 (11th Cir.1985)); *Chotin Transportation, Inc. v. United States*, 819 F.2d 1342, 1347 (6th Cir.1987) (en banc).

alleged error in this decision. The alleged negligence upon which plaintiffs rely—the negligence of USPS in performing its retained safety functions—involved no policy choices. Failure to inspect floors for uncovered and unguarded openings, for example, was not the result of a policy choice by the particular employees or agents involved. It was simply a failure to effectuate policy choices already made and incorporated in the contracts.

The decisions challenged in *Varig* were quite different. As the Supreme Court pointed out in *Berkovitz*, the *Varig* plaintiffs challenged the "FAA's decision to certify the airplanes [involved in the accidents] without first inspecting them." *Berkovitz*, 108 S.Ct. at 1959. Congress had vested the FAA with broad authority to establish an appropriate program for the enforcement of airplane safety standards. In the exercise of this authority, the FAA "had devised a system for 'spot-checking' airplanes for compliance." *Id.* The *Varig* Court held *"the establishment of that system* was a discretionary function within the meaning of the FTCA because it represented a policy determination [by the FAA] as to how best to 'accommodate the goal of air transportation safety and the reality of finite agency resources.' " *Id.* (emphasis added; *quoting Varig*, 467 U.S. at 820, 104 S.Ct. at 2768). The acts of FAA inspectors in executing the "spot-check" program were also protected because the program authorized these employees to make *policy* judgments, basing those judgments upon such considerations as "the 'degree of confidence that might reasonably be placed in a given manufacturer, the need to maximize compliance with FAA regulations, and the efficient allocation of agency re-

sources.' " *Id.* (*quoting Varig*, 467 U.S. at 820, 104 S.Ct. at 2768). Thus, *Varig* immunized from liability the adoption by FAA of the "spot-check" program and the failure of individual inspectors to inspect particular aircraft, "because they were within the range of choice accorded by federal policy and law and were the results of policy determinations." *Id.*

The acts and omissions challenged in the other cases relied upon by the government also fell in this category.[9] They occurred in areas in which an agency had been delegated authority by Congress to establish and administer appropriate safety standards. Although the discretionary function exception does not apply to regulatory activity alone,[10] acts or omissions in an area in which an agency controls policy are more likely to involve policy judgments of the kind the exception is intended to protect. *Varig*, 467 U.S. at 813–14, 104 S.Ct. at 2764–65. The statement of the Supreme Court upon which the district court particularly relied[11] referred to such a context.

This case is indistinguishable in principle from *McGarry v. United States*, 549 F.2d 587 (9th Cir.1976), and more favorable to plaintiffs on the facts. In *McGarry* the United States was sued under the FTCA for the death of an employee of an independent contractor. The employee was electrocuted when he touched a drilling rig in contact with a power line. The suit challenged the negligent failure to give notice, as required by the agency's safety rules, that work was to be performed adjacent to overhead lines so the lines could be deactivated. *Id.* at 590.

The suit was based on California's "peculiar risk" doctrine as applied in *Thorne v. United States*, 479 F.2d 804, 808–10 (9th

---

9. *West v. FAA*, 830 F.2d 1044, 1047–49 (9th Cir. 1987); *Atmospheric Testing*, 820 F.2d at 992–99; *Cunningham v. United States*, 786 F.2d 1445, 1446–47 (9th Cir.1986); *Begay v. United States*, 768 F.2d 1059, 1064–66 (9th Cir.1985); and *Natural Gas Pipeline Co. of America v. United States*, 742 F.2d 502, 504–5 (9th Cir.1984).

10. *Varig*, 467 U.S. at 809–10, 104 S.Ct. at 2762–63, *Dalehite v. United States*, 346 U.S. 15, 27, 73 S.Ct. 956, 963, 97 L.Ed. 1427 (1953); *U.S. Fidelity & Guaranty Co. v. United States*, 837 F.2d 116, 121 (3d Cir.1988). *See also McMichael v. United*

States, 751 F.2d 303, 306 (8th Cir.1985) (*Varig*'s admonition to avoid judicial second-guessing of regulatory decisions is not wholly applicable where the government pursues a proprietary rather than a regulatory objective.)

11. "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." *Varig*, 467 U.S. at 819–20, 104 S.Ct. at 2767–68.

Cir.1973).[12] The United States contended it had delegated to the contractor *"all responsibility for safety precautions, retaining no duties whatsoever; that this was done as a matter of policy, and, under the discretionary function exception, is not subject to judicial review or to being set aside by local law." McGarry*, 549 F.2d at 591 (original emphasis). We rejected the argument.

We "questioned whether the government can administratively immunize itself from tort liability under applicable state law as a matter of 'policy,'" but, as in this case, found it unnecessary to reach that question. *Id.*

Although the agency's contract with the independent contractor contained a general provision requiring the contractor to take reasonable precautions to protect the health and safety of employees, as does the Roebbelen contract, it also reserved the agency's right to inspect the contractor's activities, and authorized the agency to stop any or all work. These retention provisions were much less extensive than those in the Roebbelen contract.[13] Nonetheless, we held the agency "did not disassociate itself from all matters of safety or disclaim any function or concern in that respect." *Id.* On the contrary, "[a]s a matter of policy, then, the [agency] chose to retain some responsibility over matters of employee safety." *Id.* We concluded that the failure of government employees to fulfill this retained responsibility for securing compliance with safety rules, which required that notice be given of the scheduling of work near overhead power lines, was not within the discretionary function exception.

The *McGarry* opinion described the negligence as having occurred "at the operational rather than the planning level." *Id.* In the present case the district court held *McGarry* was no longer binding, apparently because of this "operational/planning"

language, in light of the Supreme Court's subsequent decision in *Varig*. The district court said: "Plaintiff relies on the pre-*Varig* approach of determining whether the decision was made at the planning level or operational level. The Ninth Circuit has held that in light of *Varig* this criterion is no longer valid. *See In Re Consolidated United States Atmospheric Testing Litigation*, [820 F.2d 982 (9th Cir.1987)]."

We think *McGarry* was and is consistent with Supreme Court rulings and remains binding upon the district court and this panel. *McGarry* employed the "operational/planning" formulation as a "shorthand" reference to the limitation of the section 2680(a) exception to policy judgments—a limitation reflected not only in *Varig*, but also in cases which preceded *Varig*, such as *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), and *Indian Towing Co., Inc. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), and in cases which followed it such as *Berkovitz*.

*Atmospheric Testing* disapproved use of the "operational/planning" language only when taken to refer to the level at which the persons guilty of the challenged acts or omissions were employed. 820 F.2d at 995 & n. 12; *see also Begay v. United States*, 768 F.2d 1059, 1062 n. 2 (9th Cir.1985). So understood, the usage was regarded as inconsistent with *Varig*'s statement that "it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies." 467 U.S. at 813, 104 S.Ct. at 2764. It is clear, however, that the language was not used in this sense in *McGarry*. It was used instead to refer to the nature of the judgment made by the employee, not the level in the employment hierarchy of the employee who made it. It thus reflected the standard approved in *Varig* as well as

---

**12.** Although the accident in *McGarry* occurred in Nevada, the district court concluded "that the Nevada state courts would give deference to the decisions of the California Supreme Court as interpreted in *Thorne v. United States*." *McGarry*, 549 F.2d at 590.

**13.** There was also evidence agency employees did in fact review the contractor's safety program. *Id.* at 588. See note 4.

in *Berkovitz.*[14]

That *McGarry* reflected and still reflects the law approved by the Supreme Court despite the abandonment of the "operational/planning" terminology, is illustrated by the three Eighth Circuit opinions in the *McMichael* litigation. This litigation involved an FTCA claim for injuries and deaths caused by an explosion in a munitions plant in which an independent contractor produced ammunition for the United States. The first appeal, (*Madison v. United States,* 679 F.2d 736 (8th Cir.1982)), preceded *Varig.* The Eighth Circuit held the discretionary function exception applied to the selection of an independent contractor with insufficient skills and facilities and to the promulgation of inadequate safety regulations, but did not apply to the alleged failure of the United States to enforce the safety regulations. *Id.* at 739–41. The court employed operational/planning terminology, but stated explicitly what we left to inference in *McGarry*—that the distinction relates to the quality of the act, not the status of the actor. The court said: "The planning level *consists of decisions involving questions of policy, that is, the evaluation of the financial, political, economic and social effects of a plan.* On the other hand, the operational level involves decisions relating to the normal day-to-day operations of government." *Id.* at 739 (citations omitted; emphasis added). The court concluded that once the government made the discretionary policy judgment to adopt safety rules and conduct safety inspections, simple failure to fulfill those obligations was not within the exception. *Id.* at 741.

The second *McMichael* appeal, (*McMichael v. United States,* 751 F.2d 303 (8th Cir.1985)), was decided after the *Varig* decision. The Eighth Circuit concluded *Varig* was "entirely consistent with our prior decision. The discretionary immunity exception does not bar the plaintiff's suit against the government for failing to enforce the

safety regulations in the contract." *Id.* at 306. The court concluded "we reaffirm our prior holding that the government's conduct in failing to enforce the detected violations of the safety requirements is not protected as a discretionary function." *Id.* at 307.

The third *McMichael* appeal, (*McMichael v. United States,* 856 F.2d 1026 (8th Cir. 1988)), followed the Supreme Court's decision in *Berkovitz.* The Eighth Circuit found *Berkovitz* consistent with the earlier rulings. *Id.* at 1033. The court noted that under *Berkovitz* the

> decision to entrust [the contractor] with the primary responsibility of ensuring that it complied with safety regulations and supervising plant safety involved the permissible exercise of policy judgment and is protected by the discretionary function exception. So, too, are any of the policy judgments made by officials in implementing the [agency's] policies and programs.
>
> However, as discussed, the discretionary functions exception does not apply to acts which do not involve the permissible exercise of discretion.

*Id.* (citations omitted). The Eighth Circuit concluded that since the safety enforcement procedures did not require the exercise of policy discretion by safety inspectors, "[t]he district court did not err in refusing to dismiss the employee's claim under the discretionary function exception." *Id.* at 1033–34.

Similarly, we conclude that assuming arguendo USPS retained safety obligations under the contracts, the acts and omissions of USPS agents and employees in performing those safety functions did not involve policy judgments and therefore were not excluded from FTCA by section 2680(a).

REVERSED and REMANDED.

---

**14.** *McGarry* based its use of the operational/planning language on *Driscoll v. United States,* 525 F.2d 136, 138 (9th Cir.1975). *Driscoll,* in turn, drew the expression from the opinion in *Dalehite,* 346 U.S. at 42, 73 S.Ct. at 971. The *Dalehite* court also stated the test to be

"[w]here there is room *for policy judgment and decision* there is discretion" within the meaning of section 2680(a). *Id.* at 36, 73 S.Ct. at 968 (emphasis added). This is the test repeated in *Varig,* 467 U.S. at 811, 104 S.Ct. at 2763, and in *Berkovitz,* 108 S.Ct. at 1959.