**Mark Lynn FORTNEY, et al.,
Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. Nos. 83–0200–A to 83–0202–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

May 8, 1989.

Russell W. Budd and Brian D. Weinstein, Dallas, Tex., for plaintiffs.

Collette J. Winston, Washington, D.C., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on remand from the Supreme Court of the United States. *Fortney, et al. v. United States,* —— U.S. ——, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988). The purpose of the remand is to reconsider in light of the decision of the Supreme Court of the United States in *Berkovitz v. United States,* 486 U.S. ——, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). Specifically, the apparent purpose of this remand is to determine whether or not an Army safety manual safety provision is mandatory or discretionary in nature. The regulation in the safety manual, AMCR 385–100 § 20.4 prescribes the use of containers for storage of hazardous materials. This court and the Fourth Circuit Court of Appeals had previously held that the discretionary function exception encompassed violations of mandatory government regulations. *Berkovitz* held that the violation by an agency of a mandatory directive is not "sheltered within the discretionary function exception at the Federal Tort Claims Act (FTCA) waiver of sovereign immunity." 28 U.S.C. § 2680(a).

In addition, plaintiffs argued in their brief before the Supreme Court that the use of a sprinkler system also violated another provision of the safety manual. AMCR 385–100 § 12.33(g). When the case was before this court, the use of a sprinkler system was an allegation of negligence at the trial, but at no time was there any contention that it was a mandatory regulation. Both § 12.4 and § 12.33(g) use the word "should" in describing the requirement. § 12.33(g) states as follows:

"Certain hazardous operations such as nitrocellulose dehydration should be protected with a deluge capable of supplying water on the hazard within 50 milliseconds after ignition."

The testimony at trial showed that the water deluge did not achieve the reaction time of 50 milliseconds, but the testimony at trial was undisputed that such a system as the regulation required was impossible to design and could not be purchased nor built given the state of art at the time of this accident. Furthermore, experts testified that the provisions in the manual were for general guidance. With regard to § 20.4, which refers to the use of conductive rubber tubs, four experts testified that nonconductive plastic tubs were not prohibited by the regulations. Finally, the regulations themselves suggest that AMCR 385–100 consists of advisory provisions. AMCR 385–100, 1–3b states as follows:

"The advisory provisions are those in which 'may' or 'should' are used."

When this matter was before this court previously, this court stated as follows:

"[t]his regulation's use of the word 'should' implies that the use of conductive tubs is not mandatory. 'Should, in indicating obligation or necessity, is … appreciably weaker than *must*.' *The American Heritage Dictionary* 1199 (W. Morris ed. 1976). Furthermore, § 20.4s listing of options utilizing nonconductive tubs clearly indicates that the drafters of § 20.4 contemplated situations in which nonconductive tubs would be used."

Memorandum Opinion dated June 8, 1987.

It is also noteworthy that since *Berkovitz*, the United States Court of Appeals for the First Circuit has considered the word "should" as used in The Safety Precautions for Shore activities § 2058.2. The Court found that the word "should" indicates precautions of "advisory" rather than "mandatory". *Dube v. Pittsburgh Corning*, 870 F.2d 790, 794–95 (1st Cir.1989).

Upon consideration of the specific language of the regulations involved in this case and the regulation at issue in *Berkovitz*, this court notes that the differences are great. The regulations involved in *Berkovitz* were directed to government officials, spelling out in no uncertain terms that the government officials were to act in specific, mandated actions. The violations were committed by government officials. The regulations made it clear that the agency had no discretion as to when it should issue a license. In this case, the plain language of two provisions of the safety manual, and the interpretation placed upon them by all the expert testimony at trial, reveal that they are purely guidelines. The contractor had the primary responsibility for safety, and the manual is a guide for the contractor not a binding directive for federal officials. Insofar as the contractors are concerned, several types of containers are suggested and their latitude in the very language of the provision.

Apparently realizing the weakness of its argument that the regulations in this case are mandatory, the plaintiffs, citing *Dube*, also contend that the discretionary function exception does not apply unless an affirmative policy decision was made in this case, clearly demonstrated by the government. In *Dube* the court held that failure to warn domestic bystanders of the risks associated with asbestos exposure resulted in liability on the part of government where the agency had made no decision or policy judgment. Of course, if we follow this path to its ultimate conclusion, the discretionary function exception would be stripped of all meaning. The plaintiffs argue that *Dube* applies to all cases where the government is the lessor, has contracted with a military contractor and provides safety oversight to the project. This interesting argument

evaporates, however, when we consider that in this case the Safety Manual is governmental policy which is applicable to the government and the contractor and provides for general safety standards which are non-mandatory in nature. Thus the government is not silent but has written policy relating to the ultimate issue in this case.

Plaintiffs also rely on the post-*Berkovitz* case of *McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988). Again, one finds therein a mandatory regulation which required government inspectors to evacuate an ammunition plant during an electrical storm. The government had placed inspectors at the plant who had the duty and authority to effect the evacuation. *Id.* at 1033. In this case, the regulations involved are non-mandatory.

Accordingly, this court is of the opinion upon review of the standard set forth in *Berkovitz*, that its analysis concerning the regulations in question was correctly stated in its previous decision, and that the decision of the Supreme Court in *Berkovitz* does not alter this court's opinion in any particular. Accordingly, this court again finds that it does not have subject matter jurisdiction in this case. Accordingly, final order will be entered granting the defendant's motions to dismiss.