Anthony L. MATTHEWS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 87–1731–C.

United States District Court, D. Kansas.

Aug. 30, 1989.

Andrew W. Hutton, Michaud & Hutton, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court on defendant's motion for summary judgment. On December 28, 1987, the plaintiff filed a complaint against the defendant under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), 2671–80. Since the basis for defendant's motion is that the court lacks subject matter jurisdiction, a motion to dismiss under Fed.R.Civ.P. 12(b)(1) would have been more appropriate. The defendant maintains that if the court considers matters outside the pleadings, a 12(b)(1) motion is automatically converted into a Rule 56 motion. This may be true if the motion is one for failure to state a claim upon which relief can be granted, Rule 12(b)(6), but it is not true for a 12(b)(1) motion. The court may consider matters outside the pleadings in making a determination as to whether it has subject matter jurisdiction without converting the motion into one for summary judgment. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188 (5th Cir.1986); *Williamson v. Tucker*, 645 F.2d 404, 412–413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 549–550 (1969). The court will therefore treat the motion as a motion to dismiss for lack of subject matter jurisdiction. The court notes that a pretrial order was filed on March 13, 1989. The pretrial order supercedes all pleadings and controls the subsequent course of the case, including the present motion before the court.

The parties have either stipulated to, or admitted as uncontroverted, the following facts: That on January 2, 1986, the plaintiff, Anthony Matthews, was an employee of Day and Zimmerman, Inc., and was at his job at the Kansas Army Ammunition Plant (KAAP) blending an explosive gunpowder mixture. He was injured in the course of his employment when an explosion occurred in his work area. Day and Zimmerman, Inc., is a private corporation which, since at least 1970, has operated KAAP pursuant to a series of contracts with the Department of the Army. The contract applicable in January 1986, was Contract No. DAAA09–76–C–4012. The plaintiff timely exhausted his administrative remedies under the FTCA and timely filed this action when the Army denied his administrative claim.

Twenty-eight U.S.C. § 1346(b) empowers the United States District Courts with exclusive jurisdiction of civil actions on claims against the United States, for money damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government, while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

An "employee of the government," as that phrase is used in § 1346(b), includes, among others, officers or employees of any federal agency. A "federal agency" includes the military departments of the United States as well as others, but explicitly excludes any contractor with the United States. It is clear that Congress did not intend the United States to be liable for the negligent acts of contractors or their employees. *See United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *Logue v. United States*, 412 U.S. 521, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973).

Defendant's motion is devoted to persuading the court that it lacks jurisdiction to hear the claim because the only actions alleged to be negligent are those of Day and Zimmerman employees, and since Day and Zimmerman, Inc., is an independent contractor, the United States cannot be held liable. Plaintiff's response disposes of defendant's initial argument. The plaintiff states in his response that he is not asserting a claim of vicarious liability against the defendant for the negligent acts of the independent contractor, but is asserting a claim of liability for the negligence of defendant's own employees, specifically the Commanding Officer at the KAAP and the other government employees under his command responsible for maintaining, monitoring, and insuring the safety of employees at the plant. The pretrial order reflects that the plaintiff has alleged acts of negligence by employees of the government (Dk. 41).

In his response brief, the plaintiff cursorily raises the issue of whether the acts of the defendant fit within the discretionary function exception to the FTCA. The court normally will not consider matters which are raised for the first time in a responsive pleading. However, the court believes that plaintiff raised the issue in anticipation of the defendant raising the issue at a later time. Since the defendant has filed a reply brief discussing the issue, the court will consider the arguments of the parties.

The FTCA represents a limited waiver by the United States of its sovereign immunity. *Orleans,* 425 U.S. at 812–13, 96 S.Ct. at 1974–75, 48 L.Ed.2d at 397. One exception to this waiver is the discretionary function exception. Twenty-eight U.S.C. § 2680(a) bars suit against the United States for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

In *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the United States Supreme Court outlined the analysis a court must go through to determine whether the alleged negligent acts fit within the exception. " '[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.' " 486 U.S. at ——, 108 S.Ct. at 1958, 100 L.Ed.2d at 540 (citing *United States v. Varig Airlines,* 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984)). The Supreme Court further noted:

> In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee. This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of choice. See *Dalehite v. United States,* 346 U.S. 15, 34, 97 L.Ed. 1427, 73 S. Ct. [956] 967 (1953) (stating that the exception protects 'the discretion of the executive or the administrator to act according to one's judgment of the best course'). Thus, the discretionary function exception will not apply when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive. And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect. (citation omitted).

*Berkovitz,* 486 U.S. at ——, 108 S.Ct. at 1958–59, 100 L.Ed.2d at 540–541. Even if it is assumed that the challenged conduct involves an element of judgment,

> A court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield. The basis for the discretionary function exception was Congress' desire to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.' (citation omitted). This ex-

ception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.

486 U.S. at ——, 108 S.Ct. at 1959, 100 L.Ed.2d at 541. The plaintiff in *Berkovitz* was a 2-month-old boy who had been given a dose of oral polio vaccine. He was left paralyzed and unable to breathe without the assistance of a respirator after contracting a severe case of polio. It was later determined that the infant had contracted polio from the vaccine. The plaintiff and his parents filed suit against the United States under the FTCA, alleging that the Division of Biologic Standards had acted wrongfully in licensing the pharmaceutical company to produce the vaccine and that the Bureau of Biologics of the Food and Drug administration had acted wrongfully in approving release to the public of the particular lot of vaccine containing the dose given to the plaintiff. 486 U.S. at ——, 108 S.Ct. at 1957–58, 100 L.Ed.2d at 538–539. The United States moved to dismiss the suit for lack of subject matter jurisdiction on the ground that the conduct fell within the discretionary function exception. The district court denied this motion, but the Court of Appeals reversed. *Id.* 486 U.S. at ——, 108 S.Ct. at 1957–58, 100 L.Ed.2d at 539. The Supreme Court reversed the decision of the Court of Appeals. The Court reviewed the applicable regulatory scheme and the exact allegations of agency wrongdoing advanced by the plaintiffs. As to the plaintiffs' first allegation of wrongfully issuing a license to the pharmaceutical company which manufactured the drug, the Court determined that the discretionary function exception did not bar the cause of action. The applicable statutes and regulations mandated that the Division of Biologic Standards receive certain test data before issuing a license. "The DBS has no discretion to issue a license without first receiving the required test data; to do so would violate a specific statutory and regulatory directive." 486 U.S. at ——–——, 108 S.Ct. at 1961–62, 100 L.Ed.2d at 544–545. The Court also found that the discretionary function exception did not bar a claim that the DBS licensed the polio vaccine without

determining whether the vaccine complied with regulatory standards. The Court once again looked at the applicable regulations and determined that the DBS had no discretion to deviate from the mandated procedure, which was to examine the product and determine whether the product complied with the regulatory standards. *Id.* 486 U.S. at ——, 108 S.Ct. at 1963, 100 L.Ed.2d at 545. "When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply." *Id.* 486 U.S. at ——, 108 S.Ct. at 1963, 100 L.Ed.2d at 546. As to whether the release of a certain lot of the polio vaccine was wrongful, the Court noted that the regulatory scheme governing release of the lots allowed the Bureau of Biologics to determine the appropriate manner in which to release the lots, rather than mandating specific action. That claim would be barred by the discretionary function exception, unless the acts complained of did not involve the permissible exercise of policy discretion. If the policy formulated does not leave room for "an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the action was negligent or wrongful." *Id.* 486 U.S. at ——, 108 S.Ct. at 1964, 100 L.Ed.2d at 547. The Court found that the plaintiffs' claim regarding the release of the vaccine lot which contained the dose administered to the infant, survived the motion to dismiss for lack of subject matter jurisdiction because it was sufficiently alleged that the Bureau had adopted a policy to test *all* vaccine lots for compliance with safety standards before release to the public. *Id.* 486 U.S. at ——, 108 S.Ct. at 1964–65, 100 L.Ed.2d at 547–548.

A review of some of the Circuit court opinions which have been handed down after *Berkovitz* has aided this court in making the determination of whether the conduct challenged in the case at bar fits within the discretionary function exception. In *McMichael v. United States*, 856 F.2d 1026 (8th Cir.1988), the Department of Defense and an independent contractor entered into

a contract to produce explosive photo-flash cartridges. An explosion occurred at the independent contractor's plant, killing several employees and injuring others. Consolidated actions were brought against the United States under the FTCA. 856 F.2d at 1028. After a bench trial was held, the district court awarded damages to the plaintiffs. The government appealed, claiming the court erred in finding that the claims were not barred by the discretionary function exception to the FTCA and in finding that the government was negligent in failing to enforce safety standards. *Id.* The Eighth Circuit affirmed the decision of the district court.

The contract between the independent contractor and the Department of Defense in *McMichael* required the independent contractor to promulgate safety provisions and comply with safety standards established by the Defense Department's Safety Manual. The independent contractor was to also comply with the provisions of the Armed Services Procurement Regulations. These requirements and standards were incorporated into the contract. 856 F.2d at 1029. Under the terms of the contract, the independent contractor had the primary responsibility for safety. The Defense Department placed quality assurance inspectors in the plant. These inspectors were also charged with the responsibility of safety review. *Id.* The Defense Department's safety manual required, among other things, that personnel be evacuated in the event of an electrical storm. On the morning of the explosion there was a storm in the area, but no evacuation of the plant was ordered. 856 F.2d at 1030. The district court found the inspectors were negligent in failing to order an evacuation and that this was the proximate cause of the employees' injuries. *Id.*

The Eighth Circuit utilized the analysis in *Berkovitz* in affirming the district court. The Court of Appeals noted that the Defense Department decision to entrust the independent contractor with the primary responsibility of ensuring that it complied with safety regulations was a policy decision and protected by the discretionary function exception. However, the challenged act, namely the failure to evacuate personnel in the event of an electrical storm, did not fit within the exception. The Defense Department's safety manual mandated that the inspectors were to make sure the independent contractor complied with the safety requirements at the plant, including evacuation of personnel in the event of a storm. The inspectors had no choice but to adhere to the Defense Department's own policy directives. The discretionary function exception did not apply. 856 F.2d at 1033.

In *Camozzi v. Roland/Miller & Hope Consulting Group*, 866 F.2d 287 (9th Cir. 1989), the plaintiffs, employees of a general contractor, were injured during the construction of a United States Post Office. The United States contracted with a consulting group to supervise the construction of the postal facility, and contracted with the general contractor for the actual construction. 866 F.2d at 288. The plaintiffs were injured when they fell through an unguarded opening in metal decking on the second floor. The plaintiffs filed an action against the United States under the FTCA. The district court granted summary judgment in favor of the United States, finding that the alleged negligence occurred in the performance of a discretionary function. 866 F.2d at 287.

The Ninth Circuit reversed and remanded. The court found that under the contract between the United States and the general contractor, the contractor was required to take certain safety measures, including compliance with the Occupational Safety and Health Act. One of the provisions in that Act specified that floor openings were to be covered. The contract itself specified that metal deck openings were to be covered. 866 F.2d at 288. Part of the responsibility of the consulting group hired by the United States Postal Service to administer the contract was to review the contractor's safety plan and to be concerned generally with the contractor's observance of the safety plan. The challenged conduct relied on by the plaintiffs in asserting their FTCA claim was the alleged negligence of the postal service in discharging its authority, either directly or through the consulting group, to police the

general contractor's compliance with the safety standards. 866 F.2d at 289. The district court found that the postal service retained the authority to monitor compliance and that the exercise of this authority fell within the exception. The Court of Appeals found that the exercise of this authority did not fit within the exception, stating:

> The alleged negligence upon which plaintiffs rely—the negligence of USPS in performing its retained safety functions—involved no policy choices. Failure to inspect floors for uncovered and unguarded openings, for example, was not the result of a policy choice by the particular employees or agents involved. It was simply a failure to effectuate policy choices already made and incorporated in the contracts.

866 F.2d at 290.

The Tenth Circuit recently had the opportunity to apply the *Berkovitz* analysis in a FTCA case. In *Ayala v. Joy Mfg. Co.*, 877 F.2d 846 (10th Cir.1989), several miners were killed in an explosion in a coal mine. The plaintiffs filed suit under the FTCA against the United States and the manufacturer of a continuous mining machine. One of the allegations against the United States was that a Mine Safety Health Administration inspector "negligently provided technical assistance on specific wiring connections and that he inspected and failed to detect that the lighting system was improperly and dangerously installed in violation of mandatory federal safety standards." 877 F.2d at 847. The district court dismissed the complaint on the ground that it failed to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6). The basis for the district court's dismissal was that the negligent inspection fell within the discretionary function exception. *Id.* The Tenth Circuit reversed and remanded in light of the decision in *Berkovitz.* 877 F.2d at 848. The circuit court noted that the conduct challenged by the plaintiffs was not the broad discretion given the MSHA inspectors to regulate mines, but was instead the technical assistance given by the inspector in connecting the wiring to the wrong terminal in violation of mandatory federal safety standards. *Id.*

The plaintiffs alleged that the discretionary function exception did not apply because the conduct of the inspector did not involve the permissible exercise of policy discretion. The Court of Appeals found the plaintiffs had "pled sufficient facts to withstand a motion to dismiss in light of *Berkovitz.*" 877 F.2d at 849.

The general rule which can be gleaned from *Berkovitz* and its progeny is that "when a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply." *Berkovitz,* 486 U.S. at ——, 108 S.Ct. at 1963, 100 L.Ed.2d at 546.

Turning to the facts of the present case, the plaintiff alleges, among other things, that the defendant negligently failed to control the humidity in the blending barricade and negligently failed to maintain an effective and adequate monitoring system of the humidity, when the defendant had knowledge that improper humidity can cause or contribute to explosions. The plaintiff also alleges that defendant negligently allowed the use of surgical rubber gloves, when they knew that all equipment used in sensitive explosive operations must be conductive and be free of static electricity.

The contract between the Department of the Army and Day and Zimmerman, Inc., includes a provision regarding safety. Article J–20 states in relevant part: "It is the understanding and intent of the Contracting parties that the Contractor shall utilize AMCR 385–100, Safety Manual, dated April 1970, as the implementation instructions for the safety requirements under this contract." AMCR 385–100 was therefore incorporated into the terms of the contract. AMCR 385–100 states that the commander of an AMC command, installation, or activity is solely responsible for the safety of his command. The commanding officer has the responsibility to "ensure that all activities are conducted in accordance with the safety rules and regulations" set forth in the Army Safety Manual. AMCR 385–100, p. 1–2. The commanding officer is also charged with the responsibility of requiring

"personnel of other agencies, while on an AMC establishment, to comply with the general safety regulations of his establishment and assure that operations and activities of tenant agencies do not endanger personnel and facilities for which he is responsible." More importantly, AMCR 385–100 states that the "commander *shall enforce the mandatory requirements* of this regulation and be guided by the advisory provisions. He shall institute those inspections necessary to effect compliance with the rules and regulations prescribed herein." (AMCR 385–100, p. 1–2) (emphasis added). Paragraph 1–3 of AMCR 385–100 concerns application of the regulation. That paragraph of the regulation states:

a. The mandatory requirements and advisory provisions set forth in this regulation apply to each activity and facility where the Commander is charged with the responsibility for safety.

b. Mandatory requirements are those in which the term 'shall,' 'will,' or 'must' is used, *and no deviation other than that allowed by paragraph 1–6 is permitted without specific written authority in the form of a waiver or exemption (para 1–6) from HQ, AMC....* The advisory provisions are those in which 'may' or 'should' are used, and no deviations are permitted unless local waivers are authorized in writing by the commander of his designated agent. (Emphasis added.)

■ Chapter 7 of AMCR 385–100 deals with static electricity. Paragraph 7–1 states "[t]he generation of static electricity is not in itself a hazard. The hazard arises when static is allowed to accumulate, subsequently discharging as a spark across an air gap in the presence of highly flammable material, and thus providing a source of ignition." Paragraph 7–8 provides:

*Humidification.* Humidification for preventing static electricity accumulations and subsequent discharges is usually effective if the relative humidity is above 60 percent. However, certain materials such as metallic powders and some of the pyrotechnic mixtures cannot be exposed to air with 60 percent relative humidity because of the possibility of spontaneous ignition. Where this technique is used to prevent static electricity accumulations, a daily preoperational check of the humidity levels *will* be accomplished prior to start of work.

The use of the word 'will' indicates it is a mandatory requirement that permits no deviation without specific written authority in the form of a waiver of exemption. The regulation states that the commanding officer *shall* enforce this mandatory requirement. The discretionary function exception does not bar this claim. The government employee had no choice but to ensure compliance with Paragraph 7–8. There is no element of policy discretion. Since the employee's conduct cannot be considered the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect. *Berkovitz,* 486 U.S. at ——, 108 S.Ct. at 1959, 100 L.Ed.2d at 541. The plaintiff has sufficiently alleged that the defendant negligently failed to control the humidity in the blending barricade and negligently failed to maintain an effective and adequate monitoring system. The court has subject matter jurisdiction over this claim.

Paragraph 10–16 of AMRC 385–100 states:

*Nonconductive Gloves.* Nonconductive gloves shall not be worn in locations as described in paragraph 7–5(b)(2), (3) and (4) with the exception that leather gloves may be worn while performing manual operations involving linked, unpacked ammunition with electric primers. Nonconductive gloves are permitted where work surfaces, equipment floor, item and operator (through conductive shoes) are grounded.

The use of the word "shall" in connection with the word "not," indicates that this too, is a mandatory requirement. The commanding officer had no choice but to enforce compliance with this directive, and thus the discretionary function exception does not apply. The plaintiff sufficiently alleges that the defendant was negligent in allowing the use of nonconductive surgical rubber gloves, when it knew that all equipment used in sensitive explosive operations must be conductive and be free of static

electricity. The court has subject matter jurisdiction over this claim.

The plaintiff alleges other negligent acts on the part of the defendant. At this time, the court is unable to determine whether the challenged conduct fits within the discretionary function exception. If the plaintiff can show at trial that these acts violated specific, mandatory directives and were not the product of judgment or choice, then the discretionary function exception will not apply, and this court will have subject matter jurisdiction over these claims as well.

The court briefly notes that there is some indication how the Supreme Court would rule in a case such as the one before the court. The Supreme Court granted the plaintiffs' petition for writ of certiorari in *Fortney v. United States*, — U.S. —, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988). The plaintiffs in *Fortney* were injured by an explosion at an Army munitions plant. The plaintiffs alleged that the explosion was caused by the Army's failure to observe a provision in its safety manual, notably the same manual that is at issue in the case at bar, AMCR 385–100. — U.S. at —, 109 S.Ct. at 211–12, 102 L.Ed.2d at 203. The district court dismissed the case and the Fourth Circuit affirmed. The Supreme Court vacated the judgment and remanded the case for further consideration in light of *Berkovitz*. *Id.* The purpose of the remand was to allow the Fourth Circuit to determine whether the challenged provision of AMCR 385–100 was a specific mandatory directive. Justice Scalia, who voted against granting the petition for writ of certiorari, noted that while both the district court and Court of Appeals erroneously held that the discretionary function exception included violations of mandatory government regulations, a remand to determine whether the challenged provision in *Fortney* was a specific mandatory directive would be fruitless, since the district court had made an alternate finding that the Army conduct did not violate the challenged provision. — U.S. at —, 109 S.Ct. at 211–12, 102 L.Ed.2d at 203. On remand, the district court found that the challenged provision was advisory, not mandatory, in nature, and once again granted the defendant's motion to dismiss

for lack of subject matter jurisdiction. *See Fortney v. United States*, 714 F.Supp. 207 (W.D.Va.1989).

The court recognizes that the case of *Alexander v. United States*, 605 F.2d 828 (5th Cir.1979), which the defendant cites for the proposition that the United States cannot be held vicariously liable for the negligent acts of an independent contractor, is factually similar to the present case in many respects. However, that case did not involve the issue of whether an employee of the government violated a specific mandatory directive. Since the plaintiff in the present case is not arguing that the defendant should be held liable for the negligent acts of the independent contractor, *Alexander* is not controlling. The court further finds that *Alexander* is not controlling in light of the Supreme Court's decision in *Berkovitz*.

■ The plaintiff contends that the defendant could be held liable under the line of Kansas cases which hold that there are exceptions to the general rule of nonliability of a contractee, specifically the exception that "an owner or contractee is responsible for injuries to a third party caused by work done by an independent contractor, where the contract directly requires the performance of work intrinsically dangerous, however skillfully done." *Balagna v. Shawnee County*, 233 Kan. 1068, 668 P.2d 157 (1983). The "inherently dangerous activity" doctrine allows the negligence of the independent contractor to be imputed to the contractee. The main issue in *Balagna* was whether Shawnee County, as owner, was liable *for the negligence of the independent contractor*. 233 Kan. at 1079, 668 P.2d 157. The other cases cited by the plaintiff in support of his argument likewise involve the application of the "inherently dangerous activity" doctrine in order to find the contractee vicariously liable for the negligent acts of an independent contractor. *See Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.*, 192 Kan. 480, 487–488, 389 P.2d 766 (1964); *Reilly v. Highman*, 185 Kan. 537, 540–541, 345 P.2d 652 (1959). The FTCA clearly does not contemplate any situation in which the United States will be held vicariously liable

for the negligence of an independent contractor. The court realizes that there are several circuit court cases applying state law which allow a state's "inherently dangerous activity" doctrine to hold the United States liable for the negligent acts of an independent contractor. The court believes such cases to be in error to the extent that they hold as such. It must be the negligence of a government employee which is the proximate cause of a plaintiff's injury or harm before the FTCA applies. It is also clear that the FTCA does not contemplate the United States will be held liable under a theory of strict or absolute liability just because the work performed could be considered inherently dangerous. *See McKay v. United States,* 703 F.2d 464, 472 (10th Cir.1983); *Watson v. Marsh,* 689 F.2d 604 (5th Cir.1982). The court will not consider any of these theories at the time of trial.

The court finds that plaintiff has sufficiently alleged negligent conduct on the part of a government employee which does not fit within the discretionary function exception, and which survives defendant's motion to dismiss for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED that defendant's motion to dismiss for lack of subject matter jurisdiction, originally styled as a motion for summary judgment, is denied.