**Walter and Judith TALKINGTON, Plaintiffs,**

v.

**GENERAL ELEVATOR COMPANY, INC., and United States of America, Defendants.**

**Civil Action No. 1:96–CV–89.**

United States District Court, N.D. West Virginia.

June 11, 1997.

Rocco S. Fucillo, Wilson, Fucillo & Shields, L.C., Fairmont, WV, for Plaintiffs Walter Talkington and Judith Talkington.

Joseph W. Selep, Zimmer Kunz Professional Corp., Pittsburgh, PA, for Defendant and Cross Claimant General Elevator Co., Inc.

Helen Campbell Altmeyer, Asst. U.S. Atty., U.S. Attorney's Office, Wheeling, WV, for Cross–Claimant and Cross–Defendant U.S.

### MEMORANDUM AND ORDER

KEELEY, District Judge.

### I.

Plaintiffs Walter and Judith Talkington ("the Talkingtons") are residents of Clarksburg, Harrison County, West Virginia. Defendant General Elevator Company, Inc. ("GEC") is a Maryland corporation which has its principal place of business in the State of Maryland. GEC contracted with the United States to service and maintain the elevators located at the Veterans Administration Hospital ("VA" or "VA Hospital") in Clarksburg, West Virginia.

The Talkingtons claim that they were injured on May 4, 1994 while using the elevator at the Clarksburg VA. On May 3, 1996, they filed an action for negligence against GEC in Harrison County Circuit Court which GEC removed to this Court on June 3, 1996. Sometime later, plaintiffs sought and were granted leave to join the United States as a defendant, after which, on January 27, 1997, the United States filed a motion to dismiss for lack of subject matter jurisdiction. The causes of action against the United States are based upon either imputed negligence or negligence theories of liability.

### II.

The United States cannot be held liable for tortious conduct unless it has waived its sovereign immunity by the express terms of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Because it is a waiver of sovereign immunity, the FTCA is strictly construed and all ambiguities are resolved in the Government's favor. Consequently, the independent contractor exception to the waiver of sovereign immunity is construed broadly. *See Robb v. U.S.*, 80 F.3d 884, 887 (4th Cir.1996).

The United States Supreme Court has set forth a general rule that the difference between an independent contractor and a federal agent is determined by whether the "day to day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807, 815, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). Generally, courts examine a variety of factors relevant to the relationship between the parties to determine if an entity is an independent contractor. These factors are summarized in the Restatement (Second) of Agency § 220(2):

> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Robb,* 80 F.3d at 891 n. 5 (quoting *Restatement (Second) of Agency* § 220(2)).

[6] Here, the United States entered into a contract with GEC for the maintenance, service and repair of the elevators at the VA Hospital in Clarksburg. The contract places the obligation of taking proper safety precautions upon GEC. The exercise of control over GEC by the United States is limited to enforcing the terms of the contract. GEC is a completely separate entity with specialized knowledge in the field of elevator maintenance. Furthermore, GEC supplied its own tools and equipment to work on the elevators.

The Court finds that GEC is a textbook example of an independent contractor because it is a separate company with specialized knowledge and control over its work. Consequently, GEC's negligence, if any, may not be imputed to the United States.

### III.

■ The United States is also shielded from liability for its own negligence under the discretionary function exception of the FTCA. Under the FTCA, the discretionary function exception limits the liability of the United States for its own tortious conduct:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This exception exists to prevent the judiciary from second guessing, through a tort action, legislative and administrative decisions that are grounded in social, economic and public policy. *See Williams v. United States,* 50 F.3d 299, 308 (4th Cir.1995) (citing *United States v. Varig Airlines,* 467 U.S. 797, 814, 104 S.Ct. 2755, 2764–65, 81 L.Ed.2d 660 (1984)).

■ In *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court posited a two-part test for determining whether the discretionary function exception applies: "We first inquire whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations." *Id.* at 328, 111 S.Ct. at 1277. The second part is whether "each of the regulatory actions in question involved the kind of public policy judgment that the discretionary function exception was designed to shield." *Id.* at 332, 111 S.Ct. at 1278.

In *Williams,* the Fourth Circuit examined factors that a court should consider in applying the test from *Gaubert.* There the Government had contracted with Meridian Management Corporation ("Meridian") for Meridian to provide custodial and maintenance services for a leased building. The contract required that Meridian was "responsible for the day to day inspection and monitoring of work performed to ensure compliance with the contract requirements" and to "take all necessary precautions to prevent injury to the public, building occupants, or damage to the property of others." *Id.* at 299.

Based on those facts, the court found that the Government's decision to contract with Meridian was discretionary because there was no prescribed course of conduct for engaging custodial and maintenance services. *Id.* at 309. The court also found that the decision to engage custodial and maintenance services entailed balancing fiscal considerations with the needs of the premises. *Id.* at 310. Consequently, the decision to contract

with Meridian was a discretionary function, and the United States was insulated from liability for any negligence it might have had in hiring Meridian. Furthermore, because the decision to hire Meridian was a discretionary function, decisions such as supervision and posting warning signs were "embraced by the overarching decision to engage Meridian" and the United States was not liable for its negligence in making those decisions. *Id.*

■ Applying the rationale in *Williams* to the facts in the case at bar, the Court finds no material distinction between the fact that the contractor in that case had an engineer on call twenty-four hours a day, and the fact that the contractor here, GEC, was required to have a twenty-four hour emergency hotline. The Government's decision to enter into a contract with GEC was not bound by a prescribed course of conduct and, therefore, was discretionary.

*Williams* also directs a court to consider whether the Government's decision was grounded in matters of public policy. *Id.* at 310. Here, the United States weighed numerous policy factors, such as expense, administration, payment, access to the elevators and safety, in deciding whether to engage GEC as a contractor; consequently, it is insulated from liability for any negligence on its part either in contracting with or supervising GEC. Furthermore, under *Williams*, the United States is immune for any failure on its part to warn about known dangerous conditions of the elevator. Therefore, plaintiffs' causes of action for any negligent conduct on the part of the United States either in contracting with or supervising GEC are barred by the FTCA.

Plaintiffs have urged the Court to adopt the reasoning of the Ninth Circuit in *Camozzi v. Roland/Miller & Hope Consulting Group,* 866 F.2d 287 (9th Cir.1989). In *Camozzi,* however, the United States Postal Service (USPS) had contracted for the construction of a postal building. The agreement between USPS and the contractors provided that "[a]ll work was to be performed under the general direction of the USPS's contracting, officer." *Id.* at 288. Furthermore, the USPS could change "man-

ner or method of the work without notice." *Id.* In contrast to *Camozzi,* the Government's agreement with GEC merely provides the right to inspect and test services that have already been performed. If those services are unsatisfactory, then the United States may demand that they be performed again. This difference in involvement in the day to day work being done makes *Camozzi* readily distinguishable from the case at bar.

### IV.

After due consideration, the Court finds that the defendant, United States of America, has not waived its sovereign immunity under the Federal Tort Claims Act. Consequently, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for the reasons set forth above, the Court **ORDERS** the claim against the United States of America **DISMISSED,** with prejudice, for lack of subject matter jurisdiction.