**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 21 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

GLENDEAN LOPEZ and KELLEY
MARLOW, as co-guardians of
MICHELLE R. WILLIAMS, an
incapacitated adult, and CARROLL E.
NOWAK, as parent and next friend of
ASHLEY NOWAK, a minor,

        Plaintiffs-Appellants,

  v.

UNITED STATES OF AMERICA,

        Defendant-Appellee,

  and

JOHN DOE,

        Defendant.

No. 03-2131

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. Civ. No. 02-512 LH/KBM-ACE)

---

Richard J. Valle, O'Brien & Houliston (Richard L. Kraft, The Kraft Law Firm,
LLP, with him on the briefs), for Plaintiffs-Appellants.

Cynthia L. Weisman, Assistant United States Attorney (David C. Iglesias, United
States Attorney, Elizabeth M. Martinez, Assistant United States Attorney, with
her on the brief), Albuquerque, New Mexico, for Defendant-Appellee.

Before **EBEL**, **KELLY**, and **McCONNELL**, Circuit Judges.

**McCONNELL**, Circuit Judge.

In August 2000, plaintiffs were driving along Sacaton Street in Chaves County, New Mexico. At the intersection of U.S. Highway 70, their vehicle collided with a pickup truck, resulting in significant injury to driver Michelle Williams, who remains in a coma. Plaintiffs allege that a row of mailboxes on the shoulder of the highway obstructed their view of the intersection as they entered the highway from the crossroad and was the proximate cause of the injuries sustained in the accident.

In May 2002, plaintiffs filed their suit in district court under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80. They alleged that the United States Postal Service (USPS) negligently failed to take proper account of the safety of the driving public when locating the mailboxes. In April 2003, the district court dismissed plaintiffs' action for lack of subject matter jurisdiction, holding that the actions of the USPS were discretionary functions exempt from FTCA liability pursuant to 28 U.S.C. § 2680(a). We review that ruling de novo. *Duke v. Dep't of Agric.*, 131 F.3d 1407, 1409 (10th Cir. 1997).

I

The FTCA immunizes instrumentalities of the federal government from tort liability based on the performance of "a discretionary function or duty on the part of a federal agency or an employee of the Government." 28 U.S.C. § 2680(a). This restriction is jurisdictional. *Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002), *quoting Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.") (internal quotation marks omitted). The exception applies "whether or not the discretion involved be abused." 28 U.S.C. §2680(a). Accordingly, the question of negligence is irrelevant to the applicability of the discretionary function exception. *Elder*, 312 F.3d at 1176; *Aragon*, 146 F.3d at 822.

The Supreme Court has set forth a two-part test to determine whether conduct is encompassed by the discretionary function exception and thereby immunized from FTCA liability. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). We must first consider whether the government function in question was "discretionary," meaning whether it was "a matter of judgment or choice for the acting employee." *Id.* If we find that it was, we must then consider whether it was the type of decision the discretionary function exception was designed to

protect, namely one requiring the exercise of judgment based on considerations of public policy. *Id*. at 536-37.

The Court clarified the second prong of the *Berkovitz* test in *United States v. Gaubert*, 499 U.S. 315, 325 (1991). When making the second inquiry, we are not to consider the subjective intent of the particular actor or whether he or she was animated by a concern for public policy. *Id*. Rather, we must consider whether the nature of the actions taken implicate public policy concerns, or are "susceptible to policy analysis." *Id*. We need not find that a government employee made a conscious decision regarding policy considerations in order to satisfy the second prong of the *Berkovitz* test. *Kiehn v. United States*, 948 F.2d 1100, 1105 (10th Cir. 1993).

II

In the case before us, plaintiffs contend first that USPS regulations and administrative policy remove discretion from Post Office employees to situate the mailboxes at the location in question because mailboxes "must be placed to conform to state laws and highway regulations." Postal Operations Manual § 632.524. This requirement is reiterated in the Domestic Mail Manual, which states that mailboxes must be placed "subject to state laws and regulations." Domestic Mail Manual § 2.7. Plaintiffs correctly argue that these regulations demand that applicable state highway safety regulations be followed when

-4-

determining mailbox locations. Therefore, if mailboxes are placed in violation of state law or regulations, the USPS is compelled by its own regulations to relocate them. This is a nondiscretionary mandate.

The New Mexico Administrative Code prohibits any encroachments that present "a danger to the health, safety, or welfare of the motoring public, or which interfere with the operations of the [State Highway] Department." N.M. Admin. Code tit. 18, § 20.5.9.2. The Code deems a mailbox to be an "encroachment." *Id.* § 20.5.7.2. Plaintiffs contend that the mailboxes at issue here constituted a danger within the meaning of the Code. It follows, they argue, that the placement of the mailboxes violated Post Office regulations and falls outside of the FTCA's discretionary function exception.

However, we agree with the district court that the Code does not remove discretion from the postal service with regard to the location of the mailboxes. As an initial matter, it is far from clear that § 20.5.9.2, standing alone, is sufficiently clear that it could be said to remove discretion from federal officials with regard to the placement of mailboxes. Presumably, all obstructions present some risk, however small, to the public, and determinations regarding the tolerable degree of risk could be said to involve the exercise of discretion. *See Berkovitz*, 486 U.S. at 545 ("[T]he question turns on whether the manner and method of determining compliance with the [mandatory] safety standards at issue

involve agency judgment of the kind protected by the discretionary function exception."); *Duke*, 131 F.3d at 1410 (noting that Forest Service Manual provisions establishing a policy of protecting visitors' safety were "not specific enough to eliminate the Forest Service employees' choice regarding how to act in particular circumstances").  In light of the procedures specified for enforcement of this section of the New Mexico Code, however, we need not rest on that ground.  New Mexico State Highway Department (SHD) regulations vest authority in the SHD to determine whether any roadside condition constitutes an unlawful encroachment or a hazardous obstruction.  *See* N.M. Admin. Code tit. 18, § 20.5.11.1 ("An unlawful encroachment . . . shall be identified by the Department . . . .");  *id*. § 20.5.13.2 ("The determination of whether or not an obstruction is hazardous shall be made by the District Engineer . . . .").  Normally, if the SHD finds that an object is an unlawful encroachment, it must provide written notice specifically identifying the encroachment.  *See id.* § 20.5.11.  Only then is the owner of the encroachment required to remove it.  *Id.* § 20.5.11.2.3.  There is an exception when the SHD determines that an encroachment "jeopardize[s] public safety by either creating an unsafe condition or significantly hindering the efficient movement of traffic."  *Id.* § 20.5.7.3.  Then it is considered a hazardous obstruction and may be removed without notice.  The record shows that no finding of encroachment was ever made with regard to the

mailboxes in question; no written notice of encroachment was ever sent to the Postal Service, nor did the SHD ever treat the mailboxes as a hazardous obstruction and remove them summarily. Where, as here, the SHD has not identified an encroachment as violating the Code, and has not issued the required notification nor removed the encroachment, there has been no violation of a nondiscretionary duty.

Plaintiffs note that on November 25, 1992, SHD employee Tim Basler sent a letter to Post Office employee Robert Pantoja, expressing his concern that "[e]xisting single mailbox locations are causing significant sight restrictions for exiting movements from Sacaton Street and illegal vehicle movements from the postal patrons utilizing these mailboxes." App. 189. He encouraged the Post Office to relocate them "directly west to our west right-of-way." *Id.* Nowhere in the letter, however, did Basler declare the mailboxes to be an unlawful encroachment or a hazardous obstruction. It is hardly conceivable that a state employee would complain about the Postal Service's failure to comply with state law without citing that law or mentioning that the Postal Service was in violation. Without notification by the SHD that the mailboxes were positioned illegally, the USPS was empowered to exercise its discretion and to determine a suitable location for its mailboxes. In so doing, it was free to take Basler's expression of

concern for sight obstruction into account as one of the many considerations that inform the judgment of where to situate a mailbox.

III

Plaintiffs also argue that the placement of the mailboxes was not the type of decision the discretionary function exception was designed to protect because it was a mundane decision not based on "considerations of public policy." *Berkovitz*, 486 U.S. at 537. Specifically, plaintiffs submit that the placement and maintenance of mailboxes along a given mail-delivery route is an ordinary decision unaffected by any policy analysis other than the need to comply with Post Office regulations. For support, they draw on the analysis in *Berkovitz* of the Supreme Court's decision in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955). In that case, although the decision to construct and undertake the maintenance of a lighthouse is a discretionary judgment, the Court held that the failure to maintain the lighthouse once constructed was subject to FTCA liability. *Berkovitz*, 486 U.S. at 538 n.3, *citing Indian Towing Co.*, 350 U.S. at 69. Placement of the mailboxes in this case, Plaintiffs contend, is analogous to the maintenance of the lighthouse in *Indian Towing Co.*

Plaintiffs are correct that a judgment does not necessarily fall within the scope of the discretionary function exception merely because it involves an element of choice. The applicability of the exception will turn on whether or not

that choice is susceptible to policy analysis. Therein, however, lies the critical distinction between the facts of *Indian Towing Co.* and the facts of this case. The policy considerations that presumably affect the decision to construct a lighthouse – visibility of location, cost of construction, volume of ship traffic in adjacent waterways, and so forth – are of a different order than those implicated in maintaining a lighthouse. While maintenance of that lighthouse in good condition may be necessary to the furtherance of the policy objectives behind the lighthouse's construction, the tasks involved in that maintenance (for example, keeping the light lit) do not involve any of those policy considerations. On the other hand, placement of the mailboxes was susceptible to such policy considerations as timeliness of delivery, efficiency of route, customer satisfaction, and patron and postman safety. Mr. Basler's letter even attempted to entice the Postal Service to alter the location by offering to curb a new parking area and place new concrete foundations. Presumably, the Postal Service would find these offers attractive precisely because they would enhance safety, customer satisfaction, and other policy objectives that are affected by the placement of a mailbox.

The dichotomy between government decisions that are and are not susceptible to policy analysis was clarified by this Court in *Boyd v. United States*, 881 F.2d 895 (10th Cir. 1989), and in *Kiehn*, 984 F.2d at 1104-05. In *Boyd,* we

-9-

ruled that the federal government could be held liable under the FTCA for its failure to warn swimmers in a lake of the hazards posed by boats. *Boyd*, 881 F.2d at 898. We agreed with the government that its lake zoning decisions constituted an exercise of discretion involving economic and social considerations. However, we found that those considerations did not apply to the decision not to warn swimmers about dangerous conditions that resulted from the decision not to zone out boats from an area. *Id*. at 897, 898. We ruled, therefore, that as in *Indian Towing Co.*, the discretionary function exception did not apply. *Id.* at 898.

In *Kiehn*, we found that the federal government could not be held liable for its failure to warn rock climbers of potentially unstable climbing conditions in a remote area of Dinosaur National Monument. *Kiehn*, 984 F.2d at 1101, 1106. Unlike the judgment involved in *Boyd*, the decision not to place warning signs at this site was a component of an overall policy decision to protect the area's natural scenery. *Id*. at 1104. The National Park Service's decision to have its permitted concessionaires warn employees and customers of potential hazards rather than to post warning signs required the balancing of public policy objectives such as resource allocation, visitor safety, and scenic preservation. *Id*. at 1105. These concerns are functionally analogous to those considered by the Postal Service when determining mailbox locations and are, as we held in *Kiehn*, susceptible to policy analysis.

To be sure, there is no clean distinction between decisions susceptible to "policy analysis" and those that are not. Even the maintenance of a lighthouse, at issue in *Indian Towing Co.*, could theoretically involve the allocation of scarce resources amongst competing maintenance needs. Plaintiffs attempt to minimize the amount of policy analysis involved in locating a mailbox by artificially separating the Postal Service's decisionmaking into two distinct choices: an admittedly policy-fraught choice about how to structure the delivery route itself, and a more mundane choice about how to locate mailboxes along that route. *See* Appellants' Br. 14 ("While the configuration of the delivery route may implicate a variety of choices, the location of mailboxes along the route does not involve any policy choice.") But the Supreme Court has foreclosed this kind of distinction between high-level policy setting and low-level "operational" decisions. *See Gaubert*, 499 U.S. at 325 ("A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policymaking or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest."); *United States v. Varig Airlines*, 467 U.S. 797, 820 (1988) (holding that the discretionary function exception applied not only to the FAA's general policy decision of enforcing safety standards by performing spot-checks, but also to particular employees' failure to

-11-

check particular aircraft). Rather, when the relevant law leaves room for officials to exercise policy-oriented discretion in a particular area, that discretion will be protected even with regard to what may seem to be details of implementation. In this case, the location of postal boxes is part and parcel of the broader task of establishing delivery routes, and involves the same sorts of concerns, although admittedly on a smaller scale. Thus, we find that the decision of where to place the mailboxes in question was clearly located on the policy side of the spectrum. Placement of mailboxes entails a calculated decision, based on the weighing of various costs and benefits, and not the mere carrying out of a legislative mandate that can be applied without exercising judgment.

Whether or not postal officials actually considered policy questions in this case is not legally relevant. *Gaubert*, 499 U.S. at 325. That particular alternative mailbox sites might not have detrimentally affected these policy objectives is similarly beside the point. The dispositive question is whether the relocation of the mailboxes is "susceptible to policy analysis." *Id.* We find that it is.

IV

Finally, Plaintiffs argue that the jurisdictional question in this case is intertwined with the merits of their negligence claim and that, therefore, the district court should have converted the motion to dismiss for lack of subject matter jurisdiction into a motion to dismiss for failure to state a claim, or a

-12-

motion for summary judgment. *Sizovna v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1324-24 (10th Cir. 2002); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Under this theory, the district court should have construed all of the facts in the record and reasonable inferences drawn therefrom in a light most favorable to the plaintiffs. *Worrell v. Henry*, 219 F.3d 1197, 1204 (10th Cir. 2000). The specific facts alleged to be in dispute by the plaintiffs are the extent to which the Post Office considered Mr. Basler's request before refusing it; the extent to which Post Office employees were familiar with New Mexico highway regulations; and the extent to which those regulations were actually violated. Given our analysis above, the first two questions are immaterial to the applicability of the discretionary function exception to this case. And even drawing all inferences in Plaintiffs' favor, there is no way to construe the Postal Service's obligation to obey New Mexico law and place its mailboxes safely, without specific notification that those particular mailboxes were in violation of that regulation, as leaving no space for policy analysis about the appropriate degree of safety. Moreover, plaintiffs' claim that the district court should have conducted an evidentiary hearing was not properly raised, and is therefore waived.

As we find that the USPS decision regarding the location of the mailboxes was a discretionary function within the meaning of the FTCA, we AFFIRM the judgment of the district court granting Defendant's motion to dismiss.