# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3711

_____

|  |  |  |
|---|---|---|
| Lucas Riley, | * | |
| | * | |
| Plaintiff – Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| United States of America, | * | |
| | * | |
| Defendant – Appellee. | * | |
| | * | |

_____

Submitted: March 15, 2007
Filed: May 17, 2007

_____

Before MELLOY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Lucas E. Riley sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80, for injuries caused by the alleged negligence of the United States Postal Service (USPS). The district court[1] dismissed the complaint based on sovereign immunity. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

I.

In February 2002, Riley's car was stopped on Christopher Drive, waiting to turn onto U.S. Highway 63. Mailboxes obscured his view of traffic. Believing the road was clear, Riley started onto the highway. A pickup truck broadsided his vehicle, causing serious injuries.

Before the collision, the county sheriff and a deputy – residents near Christopher Drive – complained to the Postmaster about the location of the mailboxes. The deputy sheriff presented the Postmaster a petition, signed by many residents, requesting they be moved. The Postmaster refused, citing the extra cost. After Riley's injuries, the USPS received letters and another petition. The relocation of the mailboxes was then approved.

Riley sued the United States, alleging that the USPS negligently placed, maintained, and failed to relocate the mailboxes. The district court found sovereign immunity applied, and thus it lacked subject matter jurisdiction. Riley appeals. "We review a district court's decision to dismiss a complaint for lack of subject matter jurisdiction *de novo*, placing the burden of proving the existence of subject matter jurisdiction on the plaintiff." *Green Acres Enters., Inc. v. United States,* 418 F.3d 852, 856 (8th Cir. 2005); *see also **LeMay v. United States Postal Serv.,*** 450 F.3d 797, 799 (8th Cir. 2006) (same). "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists." *Green Acres Enters., Inc.,* 418 F.3d at 856, *quoting **Osborn v. United States,*** 918 F.2d 724, 728-30 (8th Cir.1990).

II.

The United States is immune from suit unless it consents. *See **Hercules, Inc. v. United States,*** 516 U.S. 417, 422 (1996); ***United States v. Testan,*** 424 U.S. 392, 399 (1976). "Congress waived the sovereign immunity of the United States by

enacting the FTCA, under which the federal government is liable for certain torts its agents commit in the course of their employment." *C.R.S. by D.B.S. v. United States,* 11 F.3d 791, 795 (8th Cir. 1993), *citing* **28 U.S.C. § 2674**; *see also* **28 U.S.C. § 1346(b)**.

The United States is, nevertheless, immune if an exception applies. Under 28 U.S.C. § 2680(a), the FTCA does not waive immunity for "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

A two-part test determines when the discretionary function exception applies. *See C.R.S.,* 11 F.3d at 795, *citing* **Berkovitz v. United States,** 486 U.S. 531, 536 (1988). First, the conduct at issue must be discretionary, involving "an element of judgment or choice." *See* **Berkovitz,** 486 U.S. at 536; *see also* **United States v. Gaubert,** 499 U.S. 315, 322 (1991) ("the exception covers only acts that are discretionary in nature"). The "second requirement is that the judgment at issue be of the kind that the discretionary function exception was designed to shield." *C.R.S.,* 11 F.3d at 796, *quoting* **Berkovitz,** 486 U.S. at 536. "Because the exception's purpose is to prevent judicial second-guessing of government decisions based on public policy considerations, it protects only those judgments grounded in social, economic, and political policy." *Id.* at 796, *quoting* **United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),** 467 U.S. 797, 814 (1984); **Appley Brothers v. United States,** 164 F.3d 1164, 1170 (8th Cir. 1999).

The facts here are almost identical to *Lopez v. United States*, 376 F.3d 1055 (10th Cir. 2004). There, the plaintiffs' vehicle collided with a pickup truck at an intersection, causing significant injuries. Plaintiffs alleged that a row of mailboxes obstructed their view. They sued the United States, claiming the USPS was negligent for failing to take proper account of driver safety when locating the mailboxes. The

court held that the discretionary function exception shielded the USPS from liability. *Id.* at 1058, 1059.

As in *Lopez*, the discretionary function exception protects the USPS from liability in this case. First, the USPS's decision on where to locate the mailboxes was discretionary, involving an element of judgment or choice. *See id*. No federal statute or rule mandated the USPS to locate the mailboxes at any particular place. Guided by the Postal Operations Manual and the Management of Delivery Services Handbook, the USPS determined that curbside delivery (as opposed to sidewalk or central delivery) was most efficient for Christopher Drive. The Postmaster filed a declaration in this case:

> [The] Post Office had chosen to deliver mail via curbside delivery for more than 20 years prior to this accident. . . . [C]urbside delivery was the most efficient mode of delivery for this area. Even with curbside delivery, this particular route is 74 miles long. Delivery to the home sites is not practicable since many homes in this area are set miles back from the highway. Additionally, in my experience many of the roads leading back to the homes are not maintained well enough to effect safe and efficient delivery of the mail.

Further, in 2001, the USPS surveyed this delivery route, "taking into consideration factors including manpower, efficiency, economy, and safety." It then "decided to keep the current mode of delivery." *See C.R.S.,* 11 F.3d at 795 ("Decisions made at the operational level, as well as decisions made at the policy-planning level, can involve the exercise of protected discretion"); *see also Walters v. United States,* 474 F.3d 1137, 1140 (8th Cir. 2007). Based on these judgments and choices, the USPS's decision about the location of the mailboxes was discretionary.

Riley contends that the USPS had no discretion and was bound by the "Green Book." That Book, incorporated by reference in 23 C.F.R. § 625.4, is published by

the American Association of State Highway and Transportation Officials (AASHTO). It addresses sight triangle standards at intersections. The Green Book contains language such as: "After a vehicle has stopped at an intersection, the driver must have sufficient sight distance to make a safe departure through the intersection area."

The Green Book provisions, however, are guidelines and not mandatory. *See* **Rothrock v. United States,** 62 F.3d 196, 199 (7th Cir. 1995) ("despite the alleged nonconformance with certain AASHTO standards, the [Federal Highway Administration] is charged with balancing a mix of factors such as cost and safety. This is inherently a discretionary judgment involving the balancing of a mix of policy factors"). *Cf.* **Rich v. United States,** 119 F.3d 447, 451 (6th Cir. 1997) (explaining that the "very language used in the manual" for bridge maintenance "indicates it is a suggestion, not a requirement. . . . Further, AASHTO, the regulatory organization plaintiff cites, recognizes its own limitations"); **Miller v. United States,** 710 F.2d 656, 666-67 (10th Cir. 1983) ("While portions of the standards, specifications, policies, and guides deal with the specifics of engineering criteria for highways, they are not prescribed as mandatory standards . . . but are instead part of the overall regulatory scheme involving policy decisions and competing considerations"). This case is unlike *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir. 1986), where the government's policy "clearly required" elevating its power lines if safety considerations "compelled" such action, or *Mandel v. United States*, 793 F.2d 964, 967 (8th Cir. 1986), where the government did not comply with "the previously adopted safety policy."

The Green Book itself says:

> The *guidance* supplied by this text . . . is based on established practices and is supplemented by recent research. This text is also intended to form a comprehensive *reference manual* for *assistance* in administrative, planning, and educational efforts pertaining to design formulation. The fact that new design values are presented

herein does not imply that existing streets and highways are unsafe, *nor does it mandate* the initiation of improvement projects. (emphasis added).

The Green Book states that the "intent of this policy is to provide guidance to the designer by referencing a recommended range of values and dimensions. Sufficient flexibility is permitted to encourage independent designs tailored to particular situations." Contrary to Riley's argument, the Green Book further illustrates that the USPS's decision on locating the mailboxes is discretionary.

As to the second part of the *Berkovitz* test, the judgment of where to locate the mailboxes is of the kind that the discretionary function exception was designed to shield. 39 U.S.C. § 403(b) provides:

> It shall be the responsibility of the Postal Service to maintain an efficient system of collection, sorting, and delivery of the mail nationwide . . . and to establish and maintain postal facilities of such character and in such locations, that postal patrons throughout the Nation will, consistent with reasonable economies of postal operations, have ready access to essential postal services.

Balancing personnel, efficiency, economy, and safety, the USPS chose curbside delivery at the U.S.63-Christopher intersection, as opposed to other locations and modes of delivery. *See id.; see also Lopez,* 376 F.3d at 1061 ("the decision of where to place the mailboxes in question was clearly located on the policy side of the spectrum. Placement of mailboxes entails a calculated decision, based on the weighing of various costs and benefits, and not the mere carrying out of a legislative mandate that can be applied without exercising judgment"). As in *Lopez*, the discretionary function exception was designed to shield the USPS's judgment in this case. *Id*.

-6-

Finally, Riley argues that even if the USPS is protected by the discretionary function exception, this court should make "an exception to the exception" by adopting the "dangerous condition exception" in Missouri's waiver of sovereign immunity as outlined in *Martin v. Missouri Highway and Transp. Dep't*, 981 S.W.2d 577 (Mo. App. 1998). There, the state court, quoting Mo. Rev. Stat. § 537.600, explained that the Missouri Highway and Transportation Commission's immunity was "expressly waived for . . . injuries caused by the dangerous condition of the public entity's property." *Martin,* 981 S.W.2d at 579, 583, 585. Riley concedes, however, that he has "not found Eighth Circuit law approving the application of this doctrine." More importantly, the FTCA has no dangerous condition exception to the discretionary function exception.

The judgment of the district court is affirmed.

_____